DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica R. Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

METRO NEWSPAPER ADVERTISING
SERVICES, INC.

               Debtor.
-----------------------------------------------------------X

Chapter 11

Case No. 17-22445(RDD)

## DECLARATION OF PHYLLIS CAVALIERE PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1 IN SUPPORT OF AN ORDER SCHEDULING HEARING ON SHORTENED NOTICE FOR FIRST DAY MOTIONS

PHYLLIS CAVALIERE, being duly sworn, upon the penalties of perjury, hereby declares and states:

1. I am the Chief Executive Officer of Metro Newspaper Advertising Services, Inc. (the "Debtor") and I have served in that capacity since 1994. I am fully familiar with the Debtor's business affairs and operations, and am duly authorized to make this Declaration on the Debtor's behalf.

2. I submit this affidavit (a) in support of the Debtor's petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), (b) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of the Chapter 11 case, and (c) to provide general information about the Debtor's business

operations.

3. Part I of this Declaration provides an introduction to the Debtor and its Chapter 11 case and describes the circumstances giving rise to the commencement of the Chapter 11 case. Part II of this Declaration sets forth the information required by Local Bankruptcy Rule for the Southern District of New York 1007. Part III sets forth a summary of the First Day Motions and the basis for the request for a hearing on shortened notice on the First Day Motions.

### I. **Introduction**

4. On March 27, 2017, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Since the Filing Date, the Debtor has remained in possession of its assets and continued to manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor, initially formed by members of the newspaper industry in 1932, is a national newspaper planning and buying agency which services national advertisers in both traditional print and digital newspaper platforms. The Debtor services more than eighty (80) advertising agencies and over 200 major national advertisers.

6. The Debtor has four core lines of business: newspaper ads-on-page (approximately 60% of gross revenues); free standing inserts (approximately 30% of gross revenues); Hispanic and multicultural; and digital (collectively, approximately 10% of gross revenues).

7. The Debtor's parent company also owns a technology based proprietary print planning system known as *Metro NDX* which is licensed to customers as well as utilized by the Debtor as an additional tool for its clients. All of the license and consulting fees which are generated by *Metro NDX* are contributed to the Debtor just as all of the expenses associated with

the operation of the product are borne by the Debtor.

8. The Debtor enjoyed great success for over a decade with the height of its business peaking in pre-recession 2008 at $150 million in annual gross revenues and over its history, has placed over $700 million advertising dollars in the newspaper industry.

9. Unfortunately, along with the entire newsprint and media industry, the Debtor has seen a steady decline since that point, as has the entire newspaper industry. In 2016, the Debtor's annual revenues were approximately $52 million dollars which was down from $60 million in 2015. This was attributable to the loss of three (3) large clients simply due to the client's change of its agency to one which does not place its business through the Debtor.

10. In 2015, in order to combat cash flow and working capital shortages, the Debtor secured an asset based loan which had the opposite of the intended result. The lender was constantly restricting the Debtor's use of cash and requiring pay downs which left little to no working capital for operations. Faced with no choice, the Debtor was forced in 2016 to look for replacement financing which it found with its present factor, Versant Funding. While the factoring arrangement has proved to be a better financing vehicle for the Debtor's business, the time spent trying to comply with the prior lender's ever changing requirements and requests for information, followed by the process of finding a new "lender," has collectively diverted significant cost, time and energy that could have been spent focusing on the business needs. Moreover, the payoff of the prior lender and entrance into a new financial relationship was extremely costly.

11. The recent losses experienced by the Debtor were less, percentage wise, than

those of the rest of the newspaper industry and this is directly attributable to the foresight of the Debtor's principals who have consistently responded quickly to each downturn with commensurate cost cutting measures in an attempt to keep costs in line with revenues. Over the last eight (8) years approximately, cost cutting measures have included the closing of the Debtor's Chicago, San Francisco and New York City offices, and significant lay-offs and pay cuts for senior management. In addition, in 2016 the Debtor's management successfully increased historic margins of 9% to as much as 15%. In fact, after a $1.39 million loss in 2015, the Debtor showed an EBITA profit of approximately $149,000 in 2016. Unfortunately, the costs of entering into two different financing arrangements and then paying the first off carried costs of approximately $1.8 million which directly resulted in a net loss in 2016 of $1.6 million dollars. These one-time loss events are now behind the Debtor.

12. The Debtor intends to utilize the Chapter 11 process to restructure its affairs under the protections of the Bankruptcy Court. Meanwhile, the Debtor is in the process of looking for a strategic partner to help with its immediate cash flow needs in the short term and plan for growth of the business in the longer term.

13. The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as a debtor-in-possession under Chapter 11 until the Debtor can negotiate a transaction which will fund a Chapter 11 plan.

## II. **INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007**

14. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

15. The Debtor operates a full-service media buying company specializing in the newspaper industry.

**Local Rule 1007-2(a)(2)**

16. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

17. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

18. A list of the names and addresses of each of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed as **Exhibit A.**

**Local Rule 1007-2(a)(5)**

19. A list of the names and addresses of the five largest secured creditors is annexed hereto as **Exhibit B.**

**Local Rule 1007-2(a)(6)**

20. A recent balance sheet for the Debtor is not currently available but will be provided once completed.

**Local Rule 1007-2(a)(7)**

21. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

22. None of the Debtor's property is in the possession of any custodian, public officer,

mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

23. The Debtor operates from 28 Wells Avenue, Building 3, 4th Floor, Yonkers, New York 10701.

**Local Rule 1007-2(a)(10)**

24. The Debtor's records are located at its Yonkers location.

**Local Rule 1007-2(a)(11)**

25. The Debtor is not a party to any pending lawsuit.

**Local Rule 1007-2(a)(12)**

26. The senior management of the Debtor is Phyllis Cavaliere, CEO and Michael Baratoff, President.

**Local Rule 1007-2(b)(1) and (2)**

27. The estimated (non-insider) monthly compensation for the thirty (30) day period following the Chapter 11 petition is approximately $315,000.00.

28. The anticipated compensation for the officers is $54,000.00 for the same thirty (30) day period.

**Local Rule 1007-2(b)(3)**

29. A monthly cash flow budget is annexed as **Exhibit C**.

### III. FIRST DAY MOTIONS AND BASIS FOR REQUEST FOR HEARING ON SHORTENED NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1

30. Contemporaneously with this Chapter 11 filing, the Debtor expects to file the following two motions which relief is being sought on shortened notice (the "First Day Motions") as follows:

- Debtor's Motion for an Order authorizing the Debtor to (a) satisfy and, to the extent applicable, directing any payroll banks to honor pre-petition gross salaries, payroll taxes and related obligations to or for the benefit of the Debtor's employees, and (b) honor, in its discretion, pre-petition sick, vacation, personal, and similar themed days; and (ii) granting other related relief (the "**Employee Wages Motion**"); and

- Debtor's Motion for an Order (A) authorizing the Debtor to enter into Factoring Arrangement with Versant Funding LLC and Sell Certain Accounts Receivable Pursuant to 11 U.S.C. Sections 363(b) and (f), (B) Granting Versant Security Interests Pursuant to 11 U.S.C. Section 364(c) and (d) and (C) Authorizing Debtor's Use of Versant's Cash Collateral Pursuant to 11 U.S.C. Section 363(c)(2) (the "**DIP Motion**").

31. The relief sought in the First Day Motions is immediately necessary to enable the Debtors to operate effectively as debtors-in possession following the commencement of these chapter 11 cases.

32. The purposes of the First Day Motions include, among other things, to: (a) ease the Debtor's transition into Chapter 11 and mitigate potentially adverse effects of the Chapter 11 filings; (b) minimize disruption of the Debtor's ability to operate in the ordinary course of business; and (c) maintain and bolster employee morale so as to reduce employee attrition during the Debtor's Chapter 11 proceedings, which would have a detrimental impact on the Debtor's business and customer service. Each of the First Day Motions is crucial to the Debtor's restructuring efforts and preservation of the Debtor's assets and estate.

33. I submit that the relief request in the First Day Motions should be heard and determined on an expedited basis in order to allow the Debtor to continue its normal business operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

### A.     Employee Wages Motion

34.    Due to the timing of this Chapter 11 filing, the Debtor respectfully requests, among other things, entry of the Interim Order authorizing the Debtor to satisfy and, to the extent applicable, directing any payroll banks to honor, certain pre-petition gross salaries and payroll taxes for their employees submitted herewith.

35.    The Debtor's employees are critical and necessary for the Debtor's ongoing operations. Should the Debtor be rendered unable to pay its employees' wages as scheduled, there would be irreparable harm caused to the employee morale and possible loss of employees. Should this happen, the Debtor's reorganization efforts would certainly be impaired.

### B.     DIP Factoring/Cash Collateral Motion

36.    As set forth more fully in the DIP Motion, the Debtor has been factoring its invoices with Versant Funding LLC in the months leading up to the Filing Date. In connection with that factoring arrangement, which is critical to the Debtor's operations and cash flow, Versant was granted a lien on all of the Debtor's assets.

37.    In order to protect the Debtor and enable it to reorganize, it is critical that there be no upset or interference with its ordinary course operations including the continued factoring of its receivables. The Debtor must be able to continue to pay its employees and suppliers going forward, the failure of which could result in a disruption of service to its customers which would be detrimental to the Debtor and severely hamper the Debtor's efforts to reorganize.

38.    Shortened notice is necessary as the Debtor requires immediate authorization to continue factoring and using its cash which may constitute the collateral of Versant. Most urgently, the Debtor must place daily orders with its newspaper vendors, who require prompt payment, and pay its employees on Friday, March 31, 2017, as discussed herein. Items such as

rent, insurance and utilities are also crucial to the continued operations and if the Debtor were unable to use its cash during the next few weeks, it would suffer irreparable harm.

### C. Conclusion

39. The First Day Orders will enable the Debtor to stabilize and continue its operations in the ordinary course while the Debtors attempt to reorganize under the Bankruptcy Code. Accordingly, the Debtors respectfully request that the Court enter those Orders.

40. I believe that good cause exists to have a hearing on the First Day Motions which typically requires a minimum of fourteen (14) days' notice as provided for in Federal Rule of Bankruptcy Procedure 2002 and 4001.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

*/s/ Phyllis Cavliere*
Phyllis Cavaliere, CEO

# EXHIBIT A

## 20 Largest Unsecured Creditors

**See Attached**

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Metro Newspaper Advertising Services, Inc. |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known): | 17-22445 |

☐ Check if this is an amended filing

# Official Form 204
## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| MJS COMMUNICATIONS<br>358 CHESTNUT HILL AVENUE<br>SUITE 201<br>BRIGHTON, MA 02135 | | | | | | $1,368,623.89 |
| CHICAGO TRIBUNE COMPANY<br>C/O TRIBUNE COMPANY BLUE LYNX<br>2501 S STATE HWY<br>LEWISVILLE, TX 75067 | | | | | | $960,079.47 |
| SAN FRANCISCO CHRONICLE<br>C/O HEARST CORPORATION<br>4747 SOUTHWEST FREEWAY<br>HOUSTON, TX 77002 | | | | | | $740,741.17 |
| LOS ANGELES TIMES<br>C/O TRIBUNE COMPANY BLUE LYNX<br>2501 S STATE HWY<br>LEWISVILLE, TX 75067 | | | | | | $633,858.70 |
| DOODAD PRINTING<br>ATT: ED KLEMMER<br>1842 COLONIAL VILLAGE LANE<br>SUITE 101<br>LANCESTER, PA 17601 | | | | | | $544,788.98 |

Official form 204    Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims    page 1

Debtor  Metro Newspaper Advertising Services, Inc.  
Name

Case number (if known)  17-22445

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim <br> If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| DOW JONES / WALL ST JOURNAL P.O. BOX 4137 NEW YORK, NY 10261 | | | | | | $410,138.68 |
| BOSTON GLOBE NEWSPAPERS 135 WILLIAM T MORRISSEY BLVD DORCHESTER, MA 02125 | | | | | | $386,249.80 |
| SAN DIEGO UNION TRIBUNE C/O TRIBUNE COMPANY BLUE LYNX 2501 S STATE HWY LEWISVILLE, TX 75067 | | | | | | $372,784.19 |
| SEATTLE TIMES PO BOX C34805 SEATTLE, WA 98142 | | | | | | $279,473.27 |
| PITTSBURGH POST GAZETTE ATTN: AMY MCCAY CREDIT DEPT P.O. BOX 566 PITTSBURGH, PA 15230 | | | | | | $264,377.39 |
| Nili Seren 25 Terry Road Northport, NY 11768 | | Loan to Company | | | | $240,000.00 |
| KATHY JAHNS C/O METRO NEWSPAPER 200 PIER AVENUE #225 HERMOSA BEACH, CA 90254 | | | | | | $192,976.00 |
| SAN ANTONIO EXPRESS C/O HEARST CORPORATION 4747 SOUTHWEST FREEWAY HOUSTON, TX 77002 | | | | | | $159,856.92 |

Debtor  **Metro Newspaper Advertising Services, Inc.**         Case number *(if known)*  **17-22445**
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| PHILADELPHIA INQUIRER<br>801 MARKET STREET, SUITE 300<br>ATTN: CREDIT DEPARTMENT<br>PHILADELPHIA, PA 19107 | | | | | | $139,912.19 |
| CHICAGO SUN TIMES<br>8247 SOLUTION CENTER<br>CHICAGO, IL 60677 | | | | | | $139,794.93 |
| ATLANTA JOURNAL CONSTITUTION<br>C/O COX MEDIA GROUP<br>P.O. BOX 643157<br>CINCINNATI, OH 45264 | | | | | | $137,324.29 |
| MILWAUKEE JOURNAL SENTINEL<br>C/O GANNETT COMPANY /JMG SITES<br>651 N. BOONVILLE AVE<br>SPRINGFIELD, MO 65806 | | | | | | $135,317.57 |
| SAN JOSE MERCURY NEWS/BANG SHARED SERV CNTR/CRED & COLL<br>ATT: ROMAN MOORE, FINANCE<br>12320 ORACLE BLVD<br>COLORADO SPRINGS, CO 80921 | | | | | | $129,198.90 |
| NEW YORK DAILY NEWS<br>ATTN: MICHAEL PICCIRILLO<br>125 THEODORE CONRAD DRIVE<br>JERSEY CITY, NJ 07305 | | | | | | $127,608.28 |

Debtor  Metro Newspaper Advertising Services, Inc.    Case number *(if known)*  17-22445

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| FLORIDA TIMES-UNION C/O MORRIS PUBLISHING GROUP PO BOX 1486 AUGUSTA, GA 30903 | | | | | | $124,142.87 |

# EXHIBIT B

## Five Largest Secured Creditors

**VERSANT FUNDING, LLC**                                 **$-0-**

# EXHIBIT C

**Budget**

**Version**
**13 Week Cash Flow Projections**
(w/o 3/27 - w/o 6/26)

| | March | April | | | | May | | | | | June | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/27/17 | 4/3/17 | 4/10/17 | 4/17/17 | 4/24/17 | 5/1/17 | 5/8/17 | 5/15/17 | 5/22/17 | 5/29/17 | 6/5/17 | 6/12/17 | 6/19/17 | 6/26/17 |
| **Receipts:** | | | | | | | | | | | | | | |
| Gross Billing | 710,804 | 910,000 | 875,000 | 910,000 | 805,000 | 1,040,000 | 1,000,000 | 1,040,000 | 920,000 | 1,060,000 | 764,000 | 740,000 | 756,000 | 680,000 |
| Net Billing | 604,184 | 773,500 | 743,750 | 773,500 | 684,250 | 884,000 | 850,000 | 884,000 | 782,000 | 901,000 | 649,400 | 629,000 | 642,600 | 578,000 |
| Versant Advances | | | | | | | | | | | | | | |
| Collections | 453,138 | 580,125 | 557,812 | 580,125 | 513,187 | 663,000 | 637,500 | 663,000 | 586,500 | 675,750 | 487,050 | 471,750 | 481,950 | 433,500 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Compensation (Incl. Salaries, Taxes & Benefits) | 164,672 | | 164,672 | | 164,672 | | 164,672 | | 164,672 | | 164,672 | | 164,672 | |
| Commissions: | | | | | | | | | | | | | | |
| Current | | | | 35,000 | | 35,000 | | 35,000 | | 35,000 | | | 24,438 | |
| Deferred | | | | | | | | | | | | | | |
| T & E | 2,500 | | 2,000 | | 2,500 | | 2,000 | | 2,500 | | | 2,000 | | 2,500 |
| Research | 26,210 | | 14,574 | | 14,574 | | 14,574 | | 14,574 | | | 14,574 | | 14,574 |
| Accounting (EDP) | | | 5,300 | | 5,300 | | 5,300 | | 5,300 | | | 5,300 | | 5,300 |
| Rent | 16,332 | | | | 16,332 | | | | 16,332 | | | | | 16,332 |
| General Office | 34,264 | | 37,333 | | 37,333 | | 37,333 | | 37,333 | | | 37,333 | | 37,333 |
| NDX Disbursements | 16,750 | | 16,750 | | 16,750 | | 16,750 | | 16,750 | | | 16,750 | | 16,750 |
| U.S. Trustee | | 6,700 | | | | 6,700 | | | | 6,700 | | | | |
| Claims Agent | | 10,000 | | | | 10,000 | | | | 10,000 | | | | |
| | 260,728 | 16,700 | 240,629 | 35,000 | 257,461 | 51,700 | 240,629 | 35,000 | 257,461 | 51,700 | 0 | 240,629 | 24,438 | 257,461 |
| **Newspaper Disbursements** | | | | | | | | | | | | | | |
| Normal Terms | | | | | 519,598 | | | | 1,304,835 | | 1,223,880 | | | 1,491,000 |
| Prepayment (TBD) | | | | | | | | | | | | | | |
| Net Operating Cash Flow | 192,410 | 563,425 | 317,183 | 545,125 | (263,872) | 611,300 | 396,871 | 628,000 | (975,796) | 624,050 | (736,830) | 231,121 | 457,512 | (1,314,961) |
| **Beginning Cash** | 10,000 | 202,410 | 765,835 | 1,083,018 | 1,628,143 | 1,364,271 | 1,975,571 | 2,372,442 | 3,000,442 | 2,024,646 | 2,648,696 | 1,911,866 | 2,142,987 | 2,600,499 |
| + Receipts | 453,138 | 580,125 | 557,812 | 580,125 | 513,187 | 663,000 | 637,500 | 663,000 | 586,500 | 675,750 | 487,050 | 471,750 | 481,950 | 433,500 |
| − Disbursements | 260,728 | 16,700 | 240,629 | 35,000 | 777,059 | 51,700 | 240,629 | 35,000 | 1,562,296 | 51,700 | 1,223,880 | 240,629 | 24,438 | 1,748,461 |
| **Ending Cash** | 202,410 | 765,835 | 1,083,018 | 1,628,143 | 1,364,271 | 1,975,571 | 2,372,442 | 3,000,442 | 2,024,646 | 2,648,696 | 1,911,866 | 2,142,987 | 2,600,499 | 1,285,538 |