*Hearing Date: April 28, 2017*
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

METRO NEWSPAPER ADVERTISING                    Chapter 11
SERVICES, INC.,                                Case No. 17-22445(RDD)

                        Debtor.
-----------------------------------------------------------X

## DECLARATION OF Respond2 Communications, Inc., d/b/a R2C Group ("R2C Group') IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR AN ORDER DETERMINING TRONC INC. TO BE IN WILLFUL VIOLATION OF THE AUTOMATIC STAY, ETC.

R2C Group, through its Attorney and Contracts Manager, Kelli Olson, hereby declares and states, under penalties of perjury, as follows:

1. I, Kelli Olson, am the Attorney and Contracts Manager with R2C Group, one of the customers of Metro Newspaper Advertising Services, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above referenced Chapter 11 proceeding.

2. I hereby submit this Declaration in support of the motion (the "Motion") pursuant to §§362(a) and 105(a) of title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), and the Court's inherent power to enforce its orders and the mandates of the Bankruptcy Code, for the entry of an Order, inter alia, (i) determining Tronc Inc. ("Tronc") to be in willful violation of the automatic stay and (ii) directing Tronc and any of the Newspapers (as defined herein) to cease and desist from any further attempts to collect monies owed to them by the Debtor from R2C Group or from any of R2C Group's customers.

3. Since October, 2015 R2C Group has utilized the services of the Debtor.

4. R2C Group contracted with the Debtor due to its expertise, skill and reputation in the newspaper ad placement industry. The Debtor and other similar advertising service companies have created their own separate industry within the media "macro industry" with whom the advertising industry utilizes such services and directly contracts with and conducts business with.

5. Specifically, R2C Group contracts with the Debtor and utilizes the Debtor's expertise and services in the formulation, planning, pricing and placement of advertisements in Newspapers throughout the United States.

6. Throughout the course of our dealings, the nature of the customer relationship between R2C Group and the Debtor has always been the same. First, R2C Group places an order for various advertising placement services with the Debtor. The Debtor thereafter invoices R2C Group for the work, labor and services it provides to R2C Group.

7. The Debtor completely controlled the placement of ads and preparation of the ads and related services for R2C Group.

8. The Debtor had significant discretion on how to place R2C Group's ads.

9. Up until being notified of Debtor's Chapter 11 proceedings, at no time during the course of its business dealings with the Debtor did R2C Group ever interact, communicate or otherwise have any dealings with any of the newspapers that the Debtor conducts business with regarding the respective advertising placements, including but not limited to Tronc (collectively, the "Newspapers").

10. To the best of R2C Group's knowledge, the Debtor always took full and sole responsibility for the payment of invoices from the Newspapers.

11. Throughout the entire course of our business relationship, R2C Group always made payment exclusively to the Debtor and, more recently, to the Debtor's factor, Versant Funding LLC ("Versant").

12. At no time in the entire history of R2C Group's pre-petition business relationship with the Debtor did R2C Group ever communicate with or receive any communication, correspondence, invoice or other writing from any of the Newspapers regarding the advertising orders placed with Debtor.

13. Throughout the business relationship, R2C Group only contracted with the Debtor to place advertising for R2C Group's customers. R2C Group did not instruct Debtor to act as agent for R2C Group or its customers.

14. At no time in the entire history of our business relationship did R2C Group direct the Debtor as to how to conduct the Debtor's business dealings with the Newspapers.

15. Since the Chapter 11 case, R2C Group has been notified that Tronc, has demanded payment for monies owed to the Newspapers *by the Debtor* directly from R2C Group's customer.

16. Without the protection of the Bankruptcy Court, R2C Group is concerned that Tronc and the Newspapers will continue to improperly invoice and seek payment from R2C Group and/or R2C Group's customers, even though no contractual relationship exists between the Newspapers and R2C Group.

17. I hereby declare under penalties of perjury that the foregoing is true and correct.

Executed on April 27, 2017

*[signature: Kelli B. O...]*